Please go ahead, Paige. 314-0535 Moline School District No. 40 Board of Education Appellant by Floyd Kirkland, v. Honorable Pat Quinn, Affiliate by Evan Segal, and Elliott Aviation, Inc. Intervenor, Affiliate by Jason O'Rourke. Please proceed. May it please the Court and Counsel, I'm Floyd Perkins and I'm here with Co-Counsel Dan and Mark Churchill and Pat Hamlin. We represent the Plaintiff Appellant, Moline School District No. 40 Board of Education. This appeal is a constitutional challenge to Public Act 97-1161, which was enacted at the end of 2012. We allege that it wrongfully provides real estate tax exemption to a very select and very limited set of property owners. Plaintiffs assert that that act is unconstitutional because it violates three provisions of the Illinois Constitution. Special Legislation Clause, Article 4, Section 13, Limitations on Real Estate Tax Exemption, and Uniformity Clause for Real Property Taxation. All three separate sections of the Illinois Constitution. The action sought to enjoin certain state actors, the Rock Island Board of Review, and the local assessor from applying that exemption. During the proceedings, Defendant Elliot Aviation Inc. was allowed to intervene. It's a fixed base operator at the Rock Island Metropolitan Airport Authority. And this centers around fixed base operators at that facility. The trial court heard summary judgment and... They're the only one at that facility, right? They're the only fixed base operators at that facility at this time. There could be others, but they're the only ones as far as I'm aware, Your Honor. The trial court entered summary judgment and reaffirmed summary judgment in favor of the statute and the school district appeal. As enacted, Public Act 97-1161 extends a property tax exemption solely to these certain four businesses. These fixed base operators at this one Rock Island County Metropolitan Airport. The act did it through two changes in the Illinois Property Tax Code. It added a section 15-160C which says, If property of the Metropolitan Airport Authority of Rock Island County is leased to a fixed base operator that provides aeronautical services to the public, then those leasehold interests and any improvements thereon are exempt. And that's for the lessee. The lessee would be exempt. It also amended section 209-195 to provide for the provisions at 15-160C. And it did so because section 9-195 of the act provides that government organizations can lease its property to others. If they're exempt, the lessee enjoys exemption. But if the lessee is not otherwise entitled to exemption by other provisions in the code, then that lessee has to pay the taxes. It's sort of a provision. The government owns the fee. It leases it to a lessee. Sometimes it leases it to a charity. Then it would be exempt to the charity. The charity qualified for exemption. But if it leases it to a for-profit business, then it's entered on the rolls and it's taxed as if it's the fee owner, meaning the lessee has taxed its fee owner. And it's a process that's unique to that kind of lessee. Nonetheless, it's a provision well embodied in the law in Illinois. In sum, by adding 9-195 and adding this new section 15-160C as an exception, it made the FBOs at the Rock Island Municipal Airport Authority exempt where no other FBOs anywhere else in the state were. So it's a very narrow change. Now the trial judge made a finding that the school district failed to show other FBOs in Illinois were similarly situated, right? That was a finding of the trial judge. And that's dealing with the special legislation argument, correct? That was correct, Chairman. I mean, the trial judge found that nothing in that clause would bar the legislature from enacting laws that specifically address conditions that were uniquely situated. I think is that his language? And he cites some case laws that are like that. And if there's a parcel of real estate or a condition in the state that's really unique, there's a number of cases. That law might only apply to those particular pieces of property. So its special nature doesn't have other class members who are similarly situated. The question is, is there anybody else similarly situated for the special legislation challenge? And in the Peoria School District case, which is the most recent case on this issue, the court looked at that. And that was a case where they had changed the laws about which board would hear police security employment issues. And there was only one school district in the state who had a police security force at the time. And the law said the law applied only to that particular, to anybody who existed at the time. It said any school with a police force at this time will change over to this other board. And the court's analysis was, well, if this is an important change, and assuming it is, it should be available to other school districts who might obtain a police force in the future. And so the court made the point, the Supreme Court of Illinois made the point and said, if in the future someone else could come into that same space, into that same condition, have a police force at a school district, they wouldn't be able to take advantage of this law because the law was so narrow it was limited in time. And in this case, we have one FBO right now, and it's setting forth, well, it has a business plan and it would be across the river and, you know, if it saves this money, it's going to have jobs. But that doesn't mean that there couldn't be an FBO. There's 19 other airports with fixed-base operators. The record suggests there was an FBO in Lansing, Illinois, that was included in the legislation originally and then Pat LaSure, whoever the representative is out in your area, was asked that question. Why isn't it there? He was. We set forth those debates because it was kind of interesting to us when we looked at that. And basically he said the powers to be said no to Lansing. Which goes for general assembly debate, right? The power up above or something? He said the powers above me said no, take it out. So it was one of those things where Lansing got taken out. I don't know if it was a revelation from up on the high or something like that or a political revelation. Those are almost beyond my pay grade as well, but it's one of those things where obviously Lansing was original. People in Lansing thought they should be included. And the point is this. There can be FBOs in the future who will be competing with somebody in another state, but they won't be able to be exempt under this law. If this is a good idea, and people can debate whether FBOs are so unique that they need to have this provision, but why wouldn't an FBO coming down the road at another airport be in the same spot? And why wouldn't they be able to take advantage of this law? The law is so narrowly written that a future FBO at another airport wouldn't be able to take advantage of this law. So if the law had described a geographical boundary for any airport located within two hours or an hour of the state line, do you think it would have been better? Rather than naming the specific airport? Well, I think what it did is it prevented anybody else in a similarly situated airport situation. Lansing is close to the border. I think the court could take judicial notice that Lansing is right on the border of Indiana. To me, Lansing is in Michigan. I don't know where Lansing, Illinois is. It's really right on the eastern side of the state, Your Honor, and it's very close to the Indiana border. Which is where all the jobs apparently are going, right? Yeah, there's certainly no debate that Illinois' taxes are causing jobs to be lost to other states. I think, you know, in Illinois that's being debated now in Springfield. And we are not suggesting that it isn't a good idea to try to keep jobs in Illinois. But other FBOs should have been able to have the same. We even argue other employers. I mean, the concept here is if I lower your taxes, you're going to be in a position to use those monies to hire people in Illinois. Well, I think there's plenty of employers in Moline and Rock Island who would say, look, if you lower my taxes, I'll hire more people. That's what I'll do and I'll create jobs. And I think the law might have had good intentions. It might have been. Which is permissive legislation as policy. But you're saying that this violates the Constitution because similarly situated are not enjoying the same preference. And the class here is so narrow. And others, clearly, there could be another FBO that could do this. There certainly could be other employers who could do it. And the law just limits it to these FBOs. And in fact, if another FBO went to the airport, that FBO isn't necessarily going to have to do jobs. I mean, so all the unique things that's pointed out by Elliott that it might do, its business plan, its idea about what it might do there, another FBO could just take up a hanger there and do whatever it wants and not create any jobs. So the legislation doesn't mandate that anybody being an FBO there does create jobs. It just says, well, if you're there at this particular one, we're going to give you this exemption. So it's not necessarily tied so much to just Elliott. I mean, Elliott probably feels it's the dominant FBO there. But somebody else might want to sell gas or repair engines there. So there's some discussion that there was a risk the jobs would go to Des Moines? Well, I think what Elliott was saying was there's an airport on the other side of the state border over in Iowa in the Des Moines, somewhere in that area. It's three hours away. Well, by airport, it's three hours probably by car, but by airplane, it's probably not that far. And I think that's really the issue why the other 19 in the state would say the same thing. We're competing across state lines all the time. You know, airports are that way. And so this just became, you know, to our school district, it happened in our particular spot. But it's a situation that it's too restrictive. There's obviously others that could be, and we think others that are similar situations. So that's why you don't think that, you know, the Supreme Court has approved matters that were unique to one situation, but because there's the possibility in the future of having people meet the standards, it wasn't a violation of special legislation clause. Because people in the future could meet the condition. Even though at the present, only one person met it, but in the future, with that possibility. With that possibility, the special legislation clause comes into play and prevents the statute because it's too narrow. And basically, if you read that Peoria case, they said, this only applies to this one police force in this one school at this point in time because there's only one in the class. But you recognize that there could be at this location other FOBs that recognize that. So in the future, there could be other FOBs, but they just have to be at that facility. Well, they would have to be at that facility, but there could be FBOs at these other 19 other airports who are competing across state lines that would like to have exemptions at their airport and would like to be able to have jobs, you know, and have the jobs there, would take advantage of the same law if it was available to those FBOs. So your distinction between the concept that Supreme Court's talking about, it could apply to future FOBs, because here it could apply to future FOBs, just that they have to be at that facility, because it doesn't apply to other facilities. Do you see that as a difference? Well, I mean, it is a state law, and it's certainly, there doesn't seem to be anything particularly unique to airports that they wouldn't be in the same spot of competing across state lines. And if another FBO at another airport could find themselves in the very same circumstance in the near future and not be able to take advantage of this. And what I was pointing to was the other FBOs that might take root at this airport might not even want to increase jobs. I mean, it could be they would just set up shop and keep the money for themselves. There's nothing that makes them do that. So Elliot's uniqueness, while interesting, and certainly a business issue and an important policy issue for the state, isn't so unique that it's creating a unique thing just for that particular part of the state. There are other parts of the state with employers. Your advantage and your argument, basically, I mean, this, of course, is a policy debate in the General Assembly, but you're advantaging one company over similarly situated companies throughout the state. Exactly, Your Honor. And what happens here is the Special Legislation Clause says it's okay to have a special law, but not if a general law will do. If not, if a general law will do, couldn't another FBO need this just like this FBO or an employer on the border? And wouldn't that law, that general law, be better that you can get an exemption to get jobs and you would be able to meet the same public purpose? The rational basis test runs to the idea that the government purposes the rational basis, you know, creating the jobs by lowering the taxes, not that the business plan would be better for me, the end of Elliot having a better business plan by being able to have lower taxes. I did want to touch on the other two constitutional provisions, so I don't know how much more time I have, but with regard to the exemption law, the one thing I would really like to point out is that the definition in the property tax code of real estate includes leaseholds. I mean, we've set that forth in our brief, but one reads the case law. You know, leaseholds are a part of the bundle of rights of real estate. The code provides that all attributes of real estate are considered real estate. And so leaseholds are real estate, and because the Constitution says exemptions from real estate are limited to only certain types of persons and certain uses, when a for-profit is going to be given an exemption like Elliot, it's in violation of the constitutional provision about limiting real estate tax exemption because that provision, as cited by the cases I've cited, is very clear that the legislature can't enlarge the enumerated persons and uses. It must be constricted to those set forth in the Constitution, which are charitable in government uses and agricultural uses and some other schools, but it's not for-profit aviation. And so this provision just flies in the face of that. And the trial court looked at the toll highway case, but it looked at that case, and that case talked about a statute. That case didn't talk about the constitutional limitations on giving exemptions to the lessees of government property. The lessees of government property have real estate, a piece of the real estate. They have this lessee's interest in the real estate, and under the Constitution that interest in real estate is subject to tax and it's not allowed to get an exemption. And that's what our argument is with regard to that section. I can go into longer details, but I know I'm running out of time. My last argument was uniformity of taxation, and it kind of goes hand in hand with the idea that the Constitution says that exemption is limited to those persons and uses that are described in the section on limitations of tax exemption. And this is just picking some one person out, one set of parcels, and giving it an exemption, a zero valuation, where all other lessees are subject to tax. I can finish that when I'm out of my last, but with regard to that, that uniformity argument is, that's where the uniformity is lost. When that one little set of lessees who happen to be picked out by this law to be getting an exemption, which is a zero assessment, where all other lessees and all other fee owners are subject to the other rules, this law is making a blatant lack of uniformity. Good morning. May it please the court. Counsel, I'm Assistant Attorney General Evan Segal on behalf of the State Defendant's Appellees. And this morning I'm going to take about five minutes and share the remainder with my co-counsel. I will address the Article 9, Section 6 constitutionality argument, and he will cover the special legislation uniformity clause issues. We've adopted those two issues from his brief. And I'd like to begin with the burden of proof here and then explain the straightforward two-part constitutional standard for exemption under Article 9, Section 6. We're not talking anything statutory. That's an important distinction. And I thought I just heard counsel concede that most of the cases that he's discussed in his brief have emphasized statutory considerations but not constitutional ones. And as we argued in our brief, the cases on this kind of lease situation are few and far between on how to treat the leased property under Article 9, Section 6. But in terms of the burden, critically for this Court's consideration is the standard of review or the burden of proof, which places a heavy responsibility on the party challenging the constitutionality of the statute. So even if the school district here raises a question or a scintilla of a question about the constitutionality of the new provision, Section 15.1-160C of the Property Tax Code, the Court is still compelled under the long-standing burden of proof and standard of review to resolve those questions and those doubts in favor of constitutionality and affirm the Circuit Court because the burden and the standard presume that the legislature and the executive knew what they were doing when they passed the statute. So in short, the statute here is exceptionally difficult to overcome. Well, they might have known what they were doing, but it doesn't make it constitutional. It doesn't. It has to pass the two-part test that I want to talk about now. And I think the cases in the discussion show why this unique provision passes those two elements. So the two parts of this test are, first, exemptions ordinarily may be granted based on who owns the property in question. And second, the party leasing the property must be principally engaged in activities that relate to what ordinarily occurs on that property. So the airport meets both of those factors. First, because the ownership here is by a unit of local government, and that's what Article 9, Section 6 requires, literally. Secondly, it's used for airport-related aeronautic services. On the first factor, we all agree, all the parties agree, that the airport authority is a unit of local government. This Court has held that in the case. And we further agree that there's no dispute that the authority owns the property. Where we part company, and this is important, this is sort of an unstated premise that's central to the school district's argument on Article 9, Section 6, is that the owner of the property must be the entity that obtains the tax exemption. And the reply brief, for instance, says that FBOs at an airport are not owners, specifically enumerated in the provision, and I think I just read that wrong. So you're arguing the Tollway Authority Corson case? The Corson case? Yes. Is that what you're arguing, basically? I'm not arguing it. That's a statutory case. I read that case, and I don't discern any constitutional discussion in that case. Well, by analogy, at least, it's what you're arguing. I think the character of the constitutionally allowed exemption, the public good, so to speak, through the airport authority, flows with the person who leases that property. If, arguably, you can say it's an integral public function. Yes. Putting aside the first factor in ownership, aside from talking about the second requirement, the function, the party leasing the property, must be engaged in what ordinarily occurs on that property. That is, is it something that an arm of municipal government does provide, has provided, or conceivably might provide? As a constitutional question, the provision of aeronautical services is what ordinarily happens on this property, and this is important, both on the parcels where Elliot operates and also the adjacent spaces where the authority, an arm of municipal government, provides precisely the same types of services to United and Delta and other large commercial carriers that Elliot furnishes to general aviation customers. Both categories provide aeronautic services. And the authority does not pay property taxes, of course, for the commercial services that it provides to commercial carriers. It follows if the authority branched out into general aviation, that is, stood in the shoes of Elliot, it wouldn't pay taxes either. So there's no foregone revenue here under that scenario. Of course, Elliot once did pay property taxes, but the statute changed it. We would find it odd and constitutionally backward if a municipal arm of government paid taxes to a municipality. It makes no sense that a state paying a municipality. It makes no sense, therefore, for an entity standing in the shoes of that arm of government to pay those taxes. It makes no sense because Elliot, like the authority, with United and Delta, is performing functions that ordinarily occur on that property. And that was the critical focus of the Hendrickson-Pontiac case by the Supreme Court. The focus was on what is going on the property. Is it related to the flow from a government function? It was a Pontiac dealership. It wasn't a school function. So no exemption in that case. In this regard, the Supreme Court correctly held that FBO's services are integral and essential furthering the airport's public function. So the second factor is satisfied. The first factor is satisfied as well on ownership. It's not whether an FBO was mentioned in the Constitution. It's whether a unit of local government is, and it is. And their position, as I understand it, is that the Constitution forbids leasing, and the Constitution nowhere says that. I don't want to run into my colleague's time, Your Honor, so in short, the school district has not met its difficult burden of showing why Section 15-160 violates Article 9 of Section 6, and we therefore ask that you affirm on that ground. Counsel. Thank you, Your Honor. Your Honors, my name is Jason O'Rourke. I represent Elliott Aviation, and I will address two issues, as counsel noted, the Special Legislation Clause and the Uniformity Clause. It's important when we're considering the Special Legislation Clause to remember what the purpose of that clause is, and our Supreme Court has told us that the purpose is to prevent the legislature from arbitrarily discriminating in favor of one person or group to the exclusion of others who are similarly situated. The key language in there is that the district was required to prove two things, one, that the Act confers a benefit upon, a special benefit upon an FBO in Rock Island County and excluded other FBOs that are similarly situated, and two, that that decision was arbitrary. The Circuit Court properly held that the district did not do either at that level, and we submit that the district has not done either at this level. Why is it limited to a benefit to an FBO? And I'll tell you why I ask that question. It appears to me that if you were representing another FBO that wanted to establish a new location at an airport in Illinois, you would advise them, don't go to Lansing, go to Moline, because you'll get a tax break. So why is it limited to just the FBO? If it benefits a particular airport, why wouldn't that be special legislation? Well, what we have to keep in mind here is that this particular airport and this FBO at the airport... Okay, but let's just restrict it to this airport. It seems to benefit this airport in that a new FBO would come to that airport above another airport in Illinois. There is that possibility. But what the evidence was, there was no evidence that anyone was considering that at the trial court level or in the record. And what the evidence was, and the judge noted and found, was that in fact this FBO, Elliott in this case, was uniquely situated. And that's what's important here, because the FBO in the legislation does focus essentially, at this time, benefits Elliott. What was the burden... I'm sorry, go ahead, Your Honor. And only the FBOs, though. You're saying it doesn't uniquely benefit this particular airport? Well, no, what I'm saying, Your Honor, is the circuit court found that the district did not prove that there were other similarly situated FBOs. And that's important, because the burden is on the district to demonstrate that there were other similarly situated FBOs. And that's important here, because the court also found that this particular FBO was uniquely situated. We heard some discussion about the fact that there may be... On that point, do I understand your argument correctly,  to expand into a state that does not tax leasehold interests? That is part of it, Your Honor. That ties in. There's essentially two arguments on the similarly situated issue. One, the burden was on the district to prove that there were other similarly situated FBOs. The circuit court held, as you noted, that the district did not prove that. We had no burden to prove that Elliott was, in fact, uniquely situated. That's the U.S. v. Heller case, I believe, that we cited. But we went ahead and produced that evidence and demonstrated it, because, in fact, Elliott is uniquely situated. It does operate an FBO in Des Moines. There's no evidence in the record of any of these other 19 FBOs that we heard about operating other FBO facilities at other airports in other states, especially states that do not tax a leasehold interest. And there was also no evidence that there were other FBOs who were considering such a massive expansion. This is important because Elliott has the opportunity. It can do its expansion for what it needed to do, either in Des Moines and take the dozens of jobs and the millions of dollars of revenue to Polk County, Iowa, or it could do that expansion in Rock Island County, bring the dozens of jobs and the millions of dollars of revenue into Rock Island County. So that's the conclusion that the circuit court reached. So as I understand part of your argument is there's no violation of special legislation clause if you have an entity that has the ability to escape the state of Illinois and go someplace else where there's more favorable taxing policies. So that would not run afoul of special legislation to say their tax is in, right? Correct, because the courts have held that the legislature is allowed to enact a law that addresses the conditions of an entity that is uniquely situated. Does it require an ability to leave or a threat to leave? Well, in this case, I think there was both, Your Honor. And that was the factual basis underlying this. We brought forward affidavits from the Quad City Chamber of Commerce, from Bruce Carter, the director of the airport, who's employed by the Metropolitan Airport Authority, not my client, and also Greg Saar, who is employed by my client. And all of these affidavits laid out and demonstrated, you know, what this expansion would and could do. And Mr. Saar explained. Is there a requirement that the expansion take place? There is no requirement. I mean, to me it seems a little bit bullyish. It generated this legislation by threatening not to make an expansion that you have no obligation to make. Well, you're right. I don't believe there is. They'll walk away, correct? That's true. They could. I don't believe they intend to. I don't believe there's any evidence that they intend to. I also don't believe there was any evidence that Elliot ever threatened to walk away. What we had, or that Elliot ever threatened to go to Des Moines to do this. I thought you said you had both, that the capacity and the inclination. There's always an inclination to go where the business deal is the best. And if I misunderstood your question, I apologize. My word was threat. I understand why you don't want to adopt that. Well, and I think I interpreted it as saying, is there a threat to the community that this could happen? Yes, there is a general threat. And the threat is still there. But was it a specific threat from Elliot? No, I don't believe there's any evidence that anyone from Elliot ever said, do this or we're leaving. But the Quad City Chamber of Commerce put together this study that showed the benefits to the Rock Island County community and the state of Illinois via the tax revenue from all the additional money that comes in and the jobs, and acknowledged that there is the possibility they could go to Des Moines and do this. Has the Supreme Court, on that policy, on that public policy, the economics of it, have they used that rationale, standing alone, to say it's not questionable? Well, to definitively declare it's not special legislation, I don't believe so. But to address a rational basis test, yes. We've cited a case in the brief. It's important under special legislation, remember, there's two steps. One, we argue that the special legislation clause is never implicated because they have not proven that there was any similar situated entities. But two, even if the special legislation clause is implicated, your next step, then, is to conduct the rational basis analysis, the lowest, easiest hurdle to clear of the constitutional challenges. We have cited cases in the brief yard that say economic development is a rational basis. And certainly that's what we have here. I think the legislative history was clear. This was passed overwhelmingly by a bipartisan group of legislators, and the discussion was this is for economic growth, economic benefit to the area. But the question is, yes, okay, maybe we can move more quickly to the other aspects of it, but that would be true statewide. True in terms of what, Your Honor? The economic benefit to the various regions statewide. If there was evidence that other FBOs were similarly situated and wanted to expand and were making a decision between Illinois or a state that didn't tax the leasehold interest, yes. But, again, it's important to draw. You're saying there's a lack of proof at this point in the record that there were similarly situated? Correct. There is no evidence in the record that there were any other similarly situated FBOs. There's evidence there were other FBOs, but none, there's no evidence that others were considering expansions like this between a state that taxes leasehold interests and a state that does not. What was the situation with Lansing? I don't know, Your Honor. It's hard to tell from reading the legislative history why that was or was not included. I simply can't answer that question. Is it arguable because this legislation was designed to benefit Elliott rather than the airport? An airport located in another location? The legislation, I think, is important to note. It's designed to benefit the Rock Island County and the state of Illinois. Does it benefit Elliott? Yes, it does. But it's designed, when you read the legislative history, to incentivize Elliott to stay here, to stay in Illinois instead of going to Iowa, to bring the jobs and the money into Illinois. It's also important, I think, along those lines, Your Honor, to note that it's actually narrowly tailored, which is a good thing, because the residents of the county of Rock Island are the ones that are going to benefit from the expansion. At the same time, Rock Island is losing out and the taxing bodies are losing out on some revenue. But the good thing is you don't have other counties, whether it's Winnebago, up in Rockford, whether it's Cook, whether it's whatever county, they're not also shouldering the burden of losing tax revenue when, in fact, they're not going to be directly benefiting from an expansion. So in that sense, it's a narrowly tailored piece of legislation to protect the other counties that have FBOs but, in fact, may not be expanding. But it's not conditioned on the expansion taking place. If Elliott doesn't build it, they still get the tax break. That is correct. It's not conditioned on that, Your Honor. But I think there are several laws in the state of Illinois that incentivize people to do things that are not specifically conditioned on them actually doing something. That explains why Lansing may have been eliminated. It may be. The school districts there may have better laws. That's possible. Or it may be that the FBOs there had no intentions of expanding or doing anything different. Are you saying there is no other FBO operating in the state of Illinois as large as Elliott that also does business in another state? I'm saying that there's no evidence one way or the other in the record of that. Okay. Congratulations. Your Honors, we would stand on our briefs for the remaining arguments and respectfully request that the Court affirm the Circuit Court's decision and uphold the constitutionality of the act. Thank you. May it please the Court, just to address the last argument first, Elliott is not the only FBO that could be at this airport. Others can go there. So the story about what Elliott might do, it's an interesting story, but other FBOs might expand and create jobs in Illinois, and if they get a tax break, might do that too. Just because they say they might do it doesn't mean they're going to do it. And more importantly, as in the Peoria case, the Court was very clear. There was no evidence another school district was going to do a police force, but the Court said if this is a good idea, to have this change in the board for police forces in schools, then other schools who have police forces should in the future be able to take advantage of this law. And that's the same here. If FBOs are going to expand because they were in a similar situation at other airports or even here, they're the same class. And if that is a class of people, I think it's still even narrow just to call it at FBOs. I think employers throughout the whole state on the border are in the same spot. But clearly FBOs at other airports might want to expand in the future and create jobs in Illinois, and if they get a tax break, could do so. So this is too narrow. It didn't meet that test. What about the argument that you failed totally in meeting your initial burden of approval? Elliott isn't the only FBO that could be there. So there could be another FBO that isn't expanding but who will get this tax break. So the thought that Elliott's the only class member is not true. There are other class members who could be at this airport. In addition... I guess what there are is you showed no evidence of some like-kind, similar situation. Well, Elliott's uniqueness is its story is it might expand. It wants to expand. If you give me this, I probably will expand. But there's no teeth to that. And another FBO could open next door in the next door hangar and not do any of that. And they will still get the tax exemption. And they would still get the tax exemption. Because it's at this airport. Because it's at this airport. So the idea that Elliott is setting forth unique characteristics about itself, which are not even facts, they're just propositions, could be adopted by any other FBO in another spot in the state. And the ones that are next to him don't have to do that. I think Justice Wright hit on something here that is this special legislation for the FBO or special legislation for the Quad City International Airport? And so that was that. In addressing Mr. Siegel's argument just real quickly, he talked about exemption for the airport authority. We're not challenging the airport authority. In fact, right now, right before this law, Elliott was paying taxes as the lessee leasehold. The leasehold interest with the real estate interest of Elliott, the leasehold interest as a lessee, was subject to tax. $150,000. $150,000. And that's true of all the other lessee FBOs throughout the state at other airports because the government entity's fee is exempt if it uses it appropriately, owns it and uses it, which we're not arguing that. But the lessee, by the law, still has to pay tax on its property. Its property is the leasehold interest as the lessee. So that's the distinction. And so when the state was arguing… Will that go up when the expansion is done? Is that $150,000 going to go up? Well, if they increase the value of their real estate, there would be a tax increase. If they just increase their business, I don't think the business operations really matter. So it's really… Maybe they would take on more hangers and maybe a bigger plot of land and then there would be a difference in the taxes. But it would really depend on what that expansion is, if it's real estate or if it's just a business line. So with regard to the exemption issue, when counsel said we didn't cite any constitutional cases, we cited a number of cases how the Constitution limits exemption. What I wanted to point out is the Tollway case was about the statute. And so it was a unique case about a statutory provision. The real question we're arguing is, can the legislature give a for-profit business that has a real estate leasehold interest a tax exemption? And the Constitution is pretty clear. The cases we cite, Eden's and all those other cases, which are in the charitable realm but talk about the very same constitutional provision, are clear that the only people who get the exemption are the enumerated persons and the uses. And we're not talking about the fact that the fee. We're not asking the authority to be taxed. We're looking at the property interest of the lessees here. And we're saying that the lessee can't get the exemption because that Constitution blocks them because they're for-profit here. So that provision is a separate provision of the Constitution, separate from the special legislation argument, but equally blocking this kind of exemption. Thank you. Thank you. Thank you both sides for your arguments and thrones. And the court will take this matter under advisement and render a decision with dispatch. And we'll take a break now for a panel.